[Filed March 29, 1892.]

# THOMAS DEANE *v.* THE WILLAMETTE BRIDGE COMPANY.

CONSTITUTIONAL LAW—RULE OF CONSTRUCTION.—In passing upon the constitutionality of a law, an intent to violate the constitution is not to be presumed in any case; and every doubt is to be solved, and every intendment given, in favor of the constitutionality of the statute.

IDEM—TRIAL BY JURY—ASSESSMENT OF DAMAGES.—At common law, in actions of tort, where the defendant suffered a default, the assessment of damages by a jury was not a matter of right, but could be made by the court alone; hence, the provisions of subdivision 2, section 249, Hill's Code, (edition 1892,) requiring the court to assess the damages in such cases without the intervention of a jury, are not in conflict with the guaranty of the constitution of Oregon, that in civil cases the right of trial by jury shall remain inviolate.

Multnomah county: E. D. SHATTUCK, Judge.

Defendant appeals.   Reversed.

*Dolph, Bellinger, Mallory & Simon,* for Appellant.

*McGinn, Sears & Simon,* for Respondent.

LORD, J.—This is an action to recover damages for injuries which the plaintiff alleges he sustained while a passenger on a car of the defendant company as the result of its negligence. The facts show that the defendant suffered a default, and claimed under subdivision 2, section 249, Hill's Code, (edition 1892,) that the court should assess the damages. Upon demand by the plaintiff the court ordered the clerk to call a jury to assess the damages. A jury was thereupon empaneled, who, after hearing the evidence, returned a verdict for the plaintiff. The defendant took no part in the proceeding further than making the necessary objections and saving exceptions to the action of the trial court. Upon the verdict thus given, judgment was subsequently entered, and from this judgment the defendant has appealed. The error upon which the defendant relies to reverse the judgment, is the refusal of the trial court to hear the testimony and assess the damages without the intervention of a jury, as provided by the second subdivision of section 249 as amended by the act of 1891. (Laws, 1891, 173.) That subdivision is as follows: "In other actions, including all actions sounding in damages or tort, as opposed to an action for debt, if no answer be filed with the clerk of the court within the time specified in the summons, or such further time as may have been granted by the court or judge thereof, the clerk shall, upon a written motion of the plaintiff being filed, enter the default of the defendant, and thereafter the plaintiff may apply at the first or any subsequent term of court for the relief demanded in the complaint; and in all such cases, where judgment is rendered otherwise than on a verdict in favor of the plaintiff, the court, without the intervention of the jury, shall assess the damages which he shall recover. The court may hear the proof itself, or

make an order of reference to hear and report the testimony. The defendant shall not be precluded, by reason of his default, from offering proof in mitigation of damages. In making such assessment of damages, the court shall appoint a time therefor upon notice to the parties to the action. The party aggrieved by the assessment of damages shall have the right to appeal therefrom."

The language of the statute is plain and unmistakable: the court shall assess the damages without the intervention of a jury. Nor is this controverted, for it is not claimed by counsel for plaintiff that the action of the trial court can be sustained by any construction of the statute. His contention is, that the statute is unconstitutional in that it deprives the plaintiff of the right of trial by jury. He says: "Notwithstanding the statute, the plaintiff not having waived his right to trial by jury, was entitled under the constitution to have the damages assessed by a jury." In other words, his contention is, that the assessment of damages by a jury, after default, is a trial by jury of a civil case in the sense of the constitution. The provision of the constitution of this state relating to trial by jury in civil cases, is section 17 of article 1, and is as follows: "In all civil cases, the right of trial by jury shall remain inviolate." This provision of the constitution creates no new right to trial by jury. It simply secures to suitors the right to trial by jury in all cases where that right existed at the time the constitution was adopted. "This language of the constitution," said BOISE, J., "indicates that the right of trial by jury shall continue to all suitors in courts, in all cases in which it was secured to them by the laws and practice of the courts at the time of the adoption of the constitution." (*Tribou* v. *Strowbridge,* 7 Or. 158.) KELLY, C. J., said: "It was intended as a safeguard in the trial of those cases for which it is stipulated that the courts shall remain open, and wherein the parties to the suit shall have a trial by due course of law." (*Kendall* v. *Post,* 8 Or. 146.)

A like provision is found in the constitution of the state of Indiana. In *Allen* v. *Anderson*, 57 Ind. 389, it was held that the provision of section 20, article 1, of the constitution of that state, that "in all civil cases the right of trial by jury shall remain inviolate," was adopted in reference to the common law right of trial by jury. "This provision of the constitution," said Biddle, C. J., "was adopted in reference to the common law right of trial by jury as the language plainly imports, namely, that the right shall remain inviolate; that is, continue as it was. The words in all civil actions mean in all civil actions at the common law, as debt, covenant, assumpsit, trover, replevin, trespass, action on the case, etc."

The question, then, for our determination is, whether subdivision 2 of section 249 is repugnant to the constitution, in that it impairs or destroys the right of trial by jury, as it existed according to the course of common law. When it is understood what was meant by a trial by jury at common law, we will be prepared to understand whether the assessment of damages by a jury in actions of tort upon default, is a matter of right, or merely of practice. In the English practice, where the defendant suffers a default in a tort, a writ of inquiry was generally directed to the sheriff commanding him "by the oaths of twelve honest and lawful men to inquire into the damages and return such inquisition into court." Before the writ was issued, an interlocutory judgment was entered, "that the plaintiff ought to recover his damages." In the execution of the writ, the sheriff acts as judge, and tries, by a jury, the amount of damages the plaintiff has sustained. When the verdict is rendered, which must be for some damages, the inquisition is returned, and judgment is entered that the plaintiff recover the damages so assessed. (Steph. Pl. 133; 3 Black. Com. 397.) In such case, as the defendant admitted by his default that the plaintiff had a cause of action as alleged, all that the plaintiff was required to

prove, or the defendant was allowed to dispute, was the amount of damages. It thus appears at common law, where the defendant failed to answer after having been duly summoned, a judgment by default was entered against him, which established the plaintiff's right to recover damages, and only left to the defendant the right to dispute the amount of such recovery, which was usually ascertained upon a writ of inquiry in the manner described. By some of the old authorities, a writ of inquiry is considered a mere instrument to inform the conscience of the court.

In *Bruce* v. *Rawlins*, 3 Wils. 62, WILMOT, C. J., said: "This is an inquest of office to inform the conscience of the court, who if they please, may themselves assess the damages." In *Beardmor* v. *Carrington*, 2 Wils. 248, a like doctrine was announced by the same distinguished judge, where he said: "There is a difference between a principal verdict and a writ of inquiry of damages, the latter being only an inquest of office to inform the conscience of the court, and which they might have assessed themselves without any inquest at all." (*Hewett* v. *Mantell*, 2 Wils. 372.)

In 7 Vin. Abr. 301, it is said that "on demurrer in law, the justices may award damages for the party by their discretion, or award a writ to inquire of damages at their election." "Where judgment is by default, the court may give the damages, without putting the party to the trouble of a writ of inquiry." (*Ibid.* 308.) "The court may not only assess damages originally, but increase the damages previously assessed by the jury." (*Ibid.* 270.) In Finlayson's Reeves' History of English Law, it is said: "After a writ of inquiry, the court might either increase or abridge both the damages and costs as they pleased, because this was only an inquest of office to inform the court, who might have assessed the damages without an inquest." And in a note, it is added: "There was this distinction between trial by jury and mere inquisition, or inquiry by a jury, to assess damages,—that, in the latter case the inquisition was only

to inform the mind of the court, and it was at their discretion whether they would award judgment for the amount found by the jury, whereas upon trial they had no jurisdiction to interfere as to the amount of damages in cases of tort, except as to costs." (Vol. 3, 567.) According to these authorities, the distinction is plainly made between a trial by jury in an action for damages and the proceeding by writ of inquiry to ascertain the damages due from the defendant against whom an interlocutory judgment has been entered by default. In the former case the defendant has appeared and answered, and put in issue the facts alleged in the declaration as the plaintiff's cause of action, and a trial upon all such issues of fact must be by jury; while in the latter, the only purpose of the writ in authorizing the jury to inquire into the damages is to inform the mind or conscience of the court. This being its object, unless the court choose to issue the writ for its own information, it necessarily follows that it is discretionary with the court whether it will issue the writ, or, when issued, whether it will award the amount of damages found by the jury, or assess the damages itself without any inquest. This result proceeds upon the hypothesis that upon default the cause of action upon which issue might have been joined, stands admitted, and that there is no issue of fact to try, or nothing evolved by the pleadings upon which there can be a trial by jury.

Damages are the pecuniary consequences which the law imposes for the breach of some duty, or the violation of some right. When the facts constituting the right violated or duty neglected are alleged upon one side and denied upon the other, they form an issue to be tried by a jury. But when such facts are admitted, there is no issue to be tried by a jury,—the plaintiff's right to damage stands confessed. Blackstone defines a trial to be "the examination of the matter of fact in issue in a cause." (3 Black. Com. 330.) "The decision of the issue of fact is called the

trial." (Steph. Pl. 77.) "By the common law," said SHIP-MAN, J., "at the date of the adoption of the constitution, the trial of all issues of fact must be by jury. By issues of fact, are meant questions of fact as distinguished from questions of law, which the result of the pleadings in each case shows to be in dispute or controversy between the parties, and a jury trial in issues of fact was the right of the litigant." (*Raymond* v. *R. R. Co.* 43 Conn. 596; 14 Blatch. C. C. 133.) The common law required that the parties should form an issue by their pleadings before the case could be tried by a jury. It is when the parties by their pleadings come to an issue, that there is a case to be tried by jury. When the matter alleged as the foundation of the cause of action stands confessed, there is no matter of fact in issue for the examination of a jury. It results, then, that there could be no trial by jury where there is no matter of fact in issue for their examination. Said DALY, J.: "If issue has been joined, the plaintiff, whether the defendant appear to contest the trial or not, is bound to go on and establish the truth of the matter put in issue; but where the plaintiff takes judgment by default for want of an answer, the cause of action is admitted, and there is no occasion for a trial. A writ of inquiry or a reference is ordered merely to ascertain the amount of the plaintiff's damages." (*Randolph* v. *Foster*, 3 E. D. Smith, 648.) In *Raymond* v. *R. R. Co. supra*, it was held, where the defendant in a tort suffers a default, that the plaintiff has no constitutional right to have his damages assessed by a jury; and that the assessment of damages upon a default, either on contract or tort, stands upon a different footing from the trial of issues of fact. The assessment of damages by a jury, when done, is a matter of practice rather than of right. SHIPMAN, J., said: "But the assessment of damages upon a default, either in actions of tort or of contract, stood upon a different footing from the trial of issues of fact. In the early history of the law, the subject of the

ascertainment of damages was in some confusion. The courts frequently fixed the amount of damages on a judgment by default and on demurrer." (Rolle's Abr. Title, Damages.) And, "though the justices used to award inquest of damages when they gave judgment by default, yet they may give damages if they will. (Sedg. Dam. 704; Vin. Abr. Dam. 1.) Courts have also the right of revising the amount of damages which has been assessed upon a writ of inquiry." And again: "The assessment of damages by a jury in actions of tort was, however, a matter of practice, and not of right. Chief Justice WILMOT held that a writ of inquiry in an action of tort is an inquest of office to inform the conscience of the court which could itself have assessed the damages without any inquest." Under the English practice, the writ was issued at the option of the plaintiff and not of the defendant. The defendant having suffered default, has no election in the case. (1 Suth. Dam. 772.) But it was merely a rule of practice and not a matter of right. SAWYER, J., said: "The rules which govern the English practice have but little application to ours. With us, in defaulted actions, the court assesses the damages, unless for some special reason they order an inquiry into the damages by a jury; and in case that is done, no writ of inquiry issues to the sheriff, but the question is submitted by the court to one of the juries in attendance. If the court undertake to make the assessment, there is nothing in the nature of the proceeding to forbid that the question be referred to a master for informing the conscience of the court; and his doings being approved and adopted by the court become theirs. Such has long been the practice, and it is one of great convenience to both the court and the parties." ( *Price* v. *Dearborn*, 34 N. H. 486.)

From these considerations it would seem that the provision of the constitution which guarantees a trial by jury in all civil cases means in all civil actions at common law,

as debt, covenant, assumpsit, trover, replevin, trespass, action on the case, etc., and that no civil case or cause of action can be tried by a jury until there has been an issue of fact made by the pleadings of the parties; that where in a tort the plaintiff takes judgment for want of an answer, the cause of action is admitted, and there being no issue, there is no occasion for a trial by jury; that the purpose of a writ of inquiry was merely to ascertain the amount of the plaintiff's damages for the information of the court, which could itself have assessed the damages without it, and is not a trial of a civil case or cause of action; that a writ of inquiry, as established at common law, was a matter of practice, and not of right, and is subject to the supervision of the court or the legislature.

Prior to the adoption of the constitution of this state, construed in the light of our inquiries, the statute did not give to suitors the right to have a jury assess damages in case of failure of the defendant to answer. The statutes of the territory of Oregon, 116, provide, among other things, that where the defendant is in default in answering the complaint, and "the action is for the recovery of damages only, or for specific, real, or personal property, with damages for the holding thereof, the court may order the damages to be assessed by the jury; or, if to determine the amount of damages, the examination of a long account be necessary, by reference as above provided." This section is substantially copied into the codes of 1862, 1872, and 1887, in the latter of which it is section 249, which was amended by the act as above stated. This amendment makes no substantial difference in the original section, other than requiring the court to assess the damages in all actions sounding in damages or tort upon default without a jury. The language of the territorial statute, which was in force at the time of the adoption of the constitution, is upon default that "the court may order the damages to be assessed by a jury," indicating that the power vested in the court

was discretionary, either to assess the damages itself or direct a jury to assess them. This construction is consistent with the practice as established at the common law. Under that practice, the power was discretionary. May is construed as must only in cases where the legislature meant to impose a positive and absolute duty, and not merely a discretionary power. (*Thompson* v. *Lessee of Carroll*, 22 How. 422.)

Viewed in the light of the object of the writ, after judgment by default, at common law, this construction of the territorial statute is consistent in making the power conferred discretionary in the court, either to order the damages to be assessed by a jury, or to assess the damages itself. So that it cannot be said with confidence that the plaintiff had the right to demand a jury to assess the damages on default under that statute prior to the adoption of the constitution; nor does the amended statute, subdivision 2, section 249, in authorizing the court to act without a jury upon default in the assessment of damages, conflict with the constitutional guaranty by depriving the plaintiff of a trial by jury in a civil case. Upon default, as we have shown, there is made by the pleadings of the parties no issue of fact to be tried by a jury. The cause of action is admitted, and there is no occasion for a trial by jury. The common law right of trial by jury, which it was the purpose of this constitutional provision to secure, relates only to those civil cases or causes of action in which there has been an issue made by the pleadings of the parties — where the facts alleged constituting the cause of action are denied and an issue of fact is formed, which must be tried by a jury. Such a trial of an action has no application to an inquiry into damages, whether by the court, or by a jury, after default, when the cause of action stands confessed. So that it is immaterial whether we construe the territorial statute in force at the adoption of the constitution as conferring or not a discretionary power upon the court, after

default, the inquiry into damages by a jury in such case does not involve the trial of an issue made by the pleadings of the parties, but is a mere matter of practice and not of right, which could have been superseded by statute without affecting the common law rights of the parties to a trial by jury.

This being so, the amendment of the section does not impair the right of trial by jury in a civil case or cause of action, but is a mere change in practice, which the legislature is competent to make. As an intent to violate the constitution is not to be presumed in any case, so too is every doubt to be solved, and every intendment to be given in favor of the constitutionality of the statute. Guided by this principle, in view of the considerations suggested, we must affirm the validity of this statute.

The judgment must be reversed, and the cause remanded for such further proceedings as may be just and proper not inconsistent with this opinion.