[No. 36491.   Department One.   June 27, 1963.]

RICHARD E. JOHANSON, *Plaintiff and Respondent,* v. UNITED TRUCK LINES, *Defendant and Relator.**

* Reported in 383 P. (2d) 512.

*Hughes & Jeffers*, for relator.

*Whitmore, Graham & Whitmore*, for respondent.

HILL, J.—This is a review by certiorari[1] of an order of the trial court denying relator's petition to vacate an order of default entered November 15, 1961, and default judgment entered December 5, 1961. The order, insofar as it relates to the default judgment, reads as follows:

"IT IS THEREFORE ORDERED That, conditioned upon defendants' acceptance of the following terms, the Judgment heretofore entered on the 5th day of December, 1961, be vacated and set aside, the terms being that the issue remaining be limited to the question of damages; that said issue be submitted to the Court sitting without a jury; and if said terms be not accepted by the defendant, the Petition to Set Aside and Vacate Judgment shall be denied."

The defendant not accepting the conditions in the order, the petition to vacate the default judgment is denied.

Plaintiff, Richard E. Johanson, commenced this action in Chelan County for personal injuries sustained by reason of the alleged negligence of the defendant, United Truck Lines. The home office of the defendant is in Spokane, but the summons and complaint were served on Don Trotter, dock foreman at the defendant's East Wenatchee freight terminal. This was on October 17, 1961; and no appearance having been made by defendant by November 15, 1961, the plaintiff moved for, and secured, an order of default. December 5, 1961, the trial court, after hearing testimony, entered a judgment for $21,384.73 and costs. The plaintiff's attorneys then wrote a letter to the defendant, addressed to its Spokane office, asking payment of the judgment; and the defendant, claiming that this letter (received December 7, 1961) was the first notice it had of the pendency of the

---

[1]Plaintiff's suggestion that the review should have been by appeal and not by certiorari is good, but not timely. The record is before us and we will determine the issues presented.

action, petitioned (January 3, 1962) for an order vacating the order of default and the judgment.

The defendant relied in the trial court (and is relying here) on subsections 3 and 7 of RCW 4.72.010.[2]

In attacking the validity of the service, under subsection 3, the defendant admits that the summons and complaint were served on Trotter; but contends that this was not service on the corporation because he was not the "managing agent" or "office assistant . . . of the managing agent" within the meaning of our statute relative to service on corporations (RCW 4.28.080(9))[3] and relies on *D. M. Osborne & Co. v. Columbia Cy. Farmers' Alliance Corp.* (1894), 9 Wash. 666, 38 Pac. 160,[4] to support that contention.

■ The evidence established that the manager of the defendant's East Wenatchee terminal was out of town on business at the time of the service on Trotter, and that the latter was in charge during his absence. Of the 12 to 15

[2]"Causes for enumerated. The superior court in which a judgment or final order has been rendered, or made, shall have power to vacate or modify such judgment or order:

" . . .

"(3) For mistakes, neglect or omission of the clerk, or irregularity in obtaining a judgment or order.

" . . .

"(7) For unavoidable casualty, or misfortune preventing the party from prosecuting or defending."

[3]"Summons, how served. The summons shall be served by delivering a copy thereof, as follows:

" . . .

"(9) If the suit be against a company or corporation other than those designated in the preceding subdivisions of this section, to the president or other head of the company or corporation, secretary, cashier or managing agent thereof or to the secretary, stenographer or office assistant of the president or other head of the company or corporation, secretary, cashier or managing agent."

[4]The statute construed in the *Osborne* case was a forerunner of RCW 4.28.080(9), being § 7 (8) of chapter 127, Session Laws of 1893, *i.e.*,

"Sec. 7. The summons shall be served by delivering a copy thereof, as follows:

" . . .

" (8) If the suit be against a company or corporation other than those designated in the preceding subdivisions of this section, to the president or other head of the company or corporation, secretary, cashier or managing agent thereof."

employees at the branch terminal, Trotter had authority to hire and fire 9 of them. There was also evidence that both before and after the service in question, he had been served with legal process directed to the defendant, including garnishment process; and it had not, theretofore or thereafter, denied his authority to accept such process.

The trial court made an excellent analysis of the evidence and the applicable case law on this phase of the case; and its conclusion—that under a statute such as ours the general rule is that the managing agent of a corporation upon whom process could be served is one who "must have some substantial part in the management of its affairs generally or in a particular district or locality"—is abundantly supported by the authorities set out in a 1960 A. L. R. annotation on "Who is 'managing agent' of domestic corporation within statute providing for service of summons or process thereon." See 71 A. L. R. (2d) 178 *et seq.*

The trial court further found that:

". . . Trotter had been served with legal processes both before and after the service here in question, including garnishee process as against the defendant corporation, and that the corporation had accepted such service of process and had reason to know that sheriffs or other legal process servers would continue to serve process on Don Trotter."

The Wisconsin Supreme Court has held that such circumstances can be considered in determining whether a particular individual is a managing agent upon whom service of process can be made. *Neitzke v. Kraft-Phenix Dairies, Inc.* (1934), 214 Wis. 441, 253 N. W. 579.

We agree with the trial court's holding that Trotter was a managing agent of the defendant at the time and place of the service of the summons in this case.

█ The defendant insists that such a holding is contrary to the *Osborne* case, *supra,* which does squarely hold that service on a branch manager of a domestic corporation is ineffectual and that a "managing agent . . . was one who managed the affairs of the corporation, and not some particular part or branch thereof only."

This seems, however, to be an unrealistic holding in today's world of decentralization in business, banking, and industry. In the intervening years since 1894, this court has never voiced its approval of that holding; and it has been disapproved in other jurisdictions. In *Roehl v. Texas Co.* (1930), 107 Cal. App. 691, 291 Pac. 255, the court said:

" . . . Especially does appellant ask us to consider *Osborne Co. v. Columbia C. F. A. Corp.*, 9 Wash. 666 [38 Pac. 161], where, under a statute authorizing service of summons on a domestic corporation 'by delivering a copy to the president or other head of the company or corporation, secretary, cashier or managing agent thereof,' an attempt to serve an agent in charge of a branch store belonging to a corporation having a manager exercising general control of its business, including that transacted by the agent, was held ineffectual, the court saying: 'the term "managing agent" would seem to carry the idea that such an agent was one who managed the affairs of the corporation and not some particular part or branch thereof only,' and that it would not include one 'who was only in charge of a single branch of the business of the corporation among those upon whom service could be made.' There was, however, other language in the context from which the court concluded that 'when the legislature intended to provide for service upon others than those having general and uniform relations to all of the business of the company they made special provision therefor, from which it will follow that, as to corporations as to which no such special provision was made, the general language used was intended to exclude therefrom all other classes of officers and agents.' (p. 701)

" . . .

" . . . Whatever may be the situation under the Washington statute, we are not inclined to hold that to be a 'managing agent' within the meaning of our statute, such agent must manage the affairs of the corporation as a whole, nor that the term necessarily excludes one in charge of a single department of the corporation's business, nor that it necessarily excludes one in charge of all of its business at a place other than that where its principal office is, nor even that it necessarily excludes every agent whose discretion is in any degree, controlled by a superior. None of these tests are conclusive. . . ." (p. 704)

We, too, decline to follow it; and to the extent that it is inconsistent with the general rule to which we have made reference, it is overruled.[5]

As we agree with the trial court that there was adequate service on the defendant corporation, we must consider the defendant's further claim: that the order of default and the default judgment should be vacated because of "unavoidable casualty or misfortune" preventing the defendant from answering and defending (RCW 4.72.010(7)).

■ One link in the chain of proof to establish the "unavoidable casualty or misfortune" is completely lacking. Trotter testified that he placed the summons and complaint on the desk of Henry Ahnemiller, the manager of the defendant's East Wenatchee branch terminal. Donald E. Agostino, the corporation's administrative manager, stated in an affidavit that the summons and complaint were never received in the home office at Spokane. In the same affidavit he states that after the home office had received notice of the judgment, Ahnemiller told him that he (Ahnemiller) had "about the 16th day of October, 1961" mailed the summons and complaint to the Spokane office; and he concludes the affidavit with this statement:

" . . . that affiant believes and states that if said transmittals were made by the said Ahnemiller as above stated, the same must have been lost in the United States mails; that affiant believes and states that United Truck Lines, Inc. has a meritorious defense to the within action."

This leaves the mailing of the summons and complaint to the Spokane office resting on a hearsay affidavit (Agostino's statement that Ahnemiller told him they had been mailed). Plaintiff's counsel in oral argument stated that Ahnemiller was present at the hearing on whether the order of default and judgment should be vacated, but did not testify.

The trial court did not discuss the issue of "unavoidable, casualty or misfortune," but devoted its attention solely to

---

[5]The *Osborne* case also held that the fact that a defendant corporation has knowledge of the pendency of a suit against it will not dispense with the necessity of proper service; and it has been cited many times as authority for that proposition.

the sufficiency of service. However, it could not have found that "unavoidable casualty or misfortune" had been established and, at the same review, refuse to set aside the order of default and give the defendant an opportunity to plead and defend on the issues of liability and damage. We, therefore, proceed on the theory that the court found adversely to the defendant on the issue of "unavoidable casualty or misfortune" and sustain it in that position because the defendant clearly did not sustain its burden of proof.

■ Having determined that there was adequate service of process upon the defendant and that no "unavoidable casualty or misfortune" was established, there were no statutory grounds for the vacation of either the order of default or the default judgment, and it is unnecessary to consider whether defendant has shown that it had a meritorious defense. *Skidmore v. Pacific Creditors* (1943), 18 Wn. (2d) 157, 138 P. (2d) 664; *Harter v. King Cy.* (1941), 11 Wn. (2d) 583, 119 P. (2d) 919; *Haynes v. B. F. Schwartz Co.* (1892), 5 Wash. 433, 32 Pac. 220; see RCW 4.72.060.

The trial court's refusal to set aside the order of default (entered November 15, 1961) is affirmed.

The trial court also refused to vacate the default judgment (entered December 5, 1961). As we have indicated, the defendant has failed to show either failure of service or "unavoidable casualty or misfortune" preventing it from defending the action. There has been no suggestion that there was not proper proof on the issue of damages,[6] and there is a recital in the judgment that "evidence both oral and documentary" was received. We find nothing in the record which would require the trial court to vacate the default judgment.

---

[6] A default admits the plaintiff's right to recover, but it does not admit the amount claimed where the damages are unliquidated; and the amount of the recovery, in such cases, must be established by proof. RCW 4.56.160(2). *State ex rel. Allied Bldg. Credits v. Superior Court* (1953), 44 Wn. (2d) 39, 265 P. (2d) 261; *Hawk v. Mayer* (1950), 36 Wn. (2d) 858, 220 P. (2d) 885; *Paine-Gallucci, Inc. v. Anderson* (1949), 35 Wn. (2d) 312, 212 P. (2d) 805; *Skidmore v. Pacific Creditors* (1943), 18 Wn. (2d) 157, 138 P. (2d) 664; *Ferguson v. Hoshi* (1901), 25 Wash. 664, 66 Pac. 105.

What the trial court did was to say that if the defendant was willing to accept its terms, *i.e.*, conditionally opening the judgment for the consideration of the issue of damages, and this issue to be submitted to the court sitting without a jury, the default judgment (not the order of default) would be vacated.

The conditions were not accepted because the defendant believed that it was entitled to have the order of default and the default judgment set aside and to have a trial on all issues. Our conclusion—that the trial court was correct in refusing to vacate the order of default and in refusing to vacate the default judgment—does not preclude the defendant from now accepting the conditions should it elect so to do.

There remains for consideration the defendant's contention that, by the conditions imposed, it is being denied a constitutional right of a trial by jury[7] on the issue of damages.

■ As we have indicated, the defendant was granted a hearing on the issue of damages not as a matter of right but as a matter of grace. But if it were a matter of right, it is clear that the defendant being in default, the amount of the damages would be determined as provided in RCW 4.56-.160(2).[8] The statute says that the court "may order the

[7]"The right of trial by jury shall remain inviolate, but the legislature may provide for a jury of any number less than twelve in courts not of record, and for a verdict by nine or more jurors in civil cases in any court of record, and for waiving of the jury in civil cases where the consent of the parties interested is given thereto." Const. Art. 1, § 21.

[8]"Judgment by default. Judgment may be had if the defendant fail to answer to the complaint, as follows:

". . .

"(2) In other actions the plaintiff may, upon the like proof, apply to the court after the expiration of the time for answering, for the relief demanded in the complaint. If the taking of an account, or of the proof of any fact be necessary to enable the court to give judgment, or to carry the judgment into effect, the court may take the account or hear the proof, or may, in its discretion, order a reference for that purpose. Where the action is for the recovery of damages, in whole or in part, the court may order the damages to be assessed by a jury; or if to determine the amount of damages, the examination of a long account be necessary, by a reference as above provided. If the defendant give notice of appearance in the action, before the expiration of the time for answer-

damages to be assessed by a jury" in such a situation, but assessment by the jury is clearly discretionary and not mandatory. In *Deane v. Willamette Bridge Co.* (1892), 22 Ore. 167, 29 Pac. 440, it was held that an assessment of damages after a default is not a trial of a civil case within the meaning of a constitutional provision for a trial by jury "in all civil cases." The rationale of this holding is expressed in the following quotation:

" . . . Upon default, as we have shown, there is made by the pleadings of the parties no issue of fact to be tried by a jury. The cause of action is admitted, and there is no occasion for a trial by jury. The common law right of trial by jury, which it was the purpose of this constitutional provision to secure, relates only to those civil cases or causes of action in which there has been an issue made by the pleadings of the parties—where the facts alleged constituting the cause of action are denied and an issue of fact is formed, which must be tried by a jury. Such a trial of an action has no application to an inquiry into damages, whether by the court, or by a jury, after default, when the cause of action stands confessed. . . ." (p. 176 of 22 Ore.)

See also *Dyson v. Rhode Island Co.* (1904), 25 R. I. 600, 57 Atl. 771.

There is a suggestion that, not having availed itself of the conditional vacation of the default judgment, the defendant has no further rights. We are satisfied that a trial court cannot impose conditions designed to deprive a litigant of his right to appellate review of orders entered, and we are sure that the trial court had no such thought in mind.

We hold that the status of this case on remand is exactly what it was at the time the writ of certiorari was sought and obtained, and the defendant has its election to accept or reject the conditional vacation.

The plaintiff, Richard E. Johanson, is entitled to recover his costs herein to be taxed.

OTT, C. J., ROSELLINI, HUNTER, and HALE, JJ., concur.

---

ing, he shall be entitled to five days' notice of the time and place of application to the court for the relief demanded in the complaint." RCW 4.56.160(2)