435 P.2d 719

Jerry CAMACHO, a minor by his mother and best friend Helen Camacho, Appellant,

v.

Henry M. GARDNER and Jane Doe Gardner, husband and wife, and Ralph T. Badilla, Appellees.

No. 2 CA–CIV 403.

Court of Appeals of Arizona.

Dec. 29, 1967.

William Messing, Tucson, for appellant.

Chandler, Tullar, Udall & Richmond, by D. B. Udall, Tucson, for appellees.

MOLLOY, Judge.

This appeal questions the propriety of the trial court's setting aside an entry of the defendants' default and the $50,000 judgment for the plaintiff which had been entered on the default.

Since the trial court granted the defendants' motion, our function on appeal is to examine the affidavits submitted in support of and in opposition to the motion to set aside default and default judgment in the strongest light possible in favor of the defendants, prevailing parties below. Thomas v. Goettl Bros. Metal Products, 76 Ariz. 54, 57, 258 P.2d 816 (1953). Accordingly, the facts as stated here are those undisputed in the record and those supplied by the affidavits of the defendants and defendants' counsel.

On December 21, 1966, an action to recover for personal injuries to the minor-plaintiff was instituted on his behalf. The Gardners, husband and wife, were served with a copy of the summons and complaint on December 22, 1966. Previous to this date, the Gardners had been represented by counsel, a Mr. David Pakula, in connection with their claim for injuries sustained in the same accident which gives rise to the minor-plaintiff's action.

The Gardners had received a letter from the plaintiff's counsel informing them that a civil action was contemplated against them and suggesting they forward the letter to their insurance company. The Gardners had contacted their attorney, Mr. Pakula, about this letter and he advised them that as soon as the suit papers were received by them, they should be forwarded "immediately" to their insurance company. Additionally, Mr. Pakula advised the Gardners that he would notify the appropriate insurance adjuster of the letter threatening suit, and Mr. Pakula forthwith did this.

At the time the complaint and summons were served upon the defendants, the process server informed the defendants they should turn the papers over to their insurance company. After service on December 22, 1966, the Gardners "forgot" about the service and did nothing about notifying either the insurance company or their attorney until they were informed of the default judgment on January 13, 1967. At this time, they found the suit papers in a cupboard in their home.

The grounds advanced below for the setting aside of the default and the default judgment were: * * * on the grounds of "mistake, inadvertence, surprise, and excusable neglect." These are the words of subparagraph (1) of Rule 60(c), R.Civ.P., 16 A.R.S. By its terms, this rule applies only to the setting aside of the default judgment. The test as to whether a default should be set aside is as stated in Rule 55 (c), R.Civ.P., 16 A.R.S. —"* * * for good cause shown." 6 Moore's Federal Practice § 55.10 [1], at 1827 (2d ed. 1953), see also § 55.10 [2], at 1830.

Though these two rules use different language as to the test for granting relief, in the many decisions in this state pertaining to the setting aside of a default and default judgment, no distinction has ever been made which would suggest that the trial court has any discretion in separating the default from the default judg-

ment on such a motion, i. e., Marquez v. Rapid Harvest Co., 99 Ariz. 363, 409 P.2d 285 (1965); Bateman v. McDonald, 94 Ariz. 327, 385 P.2d 208 (1963); Hendrie Buick Co. v. Mack, 88 Ariz. 248, 253, 355 P.2d 892 (1960); Marsh v. Riskas, 73 Ariz. 7, 9, 236 P.2d 746 (1951); Rogers v. Tapo, 72 Ariz. 53, 57, 230 P.2d 522 (1951); Burbage v. Jedlicka, 27 Ariz. 426, 431–432, 234 P. 32 (1925); Mann v. Hennessey, 2 Ariz. App. 438, 440, 409 P.2d 597 (1966).

■ The decisions in this jurisdiction indicate that the granting of relief from default and/or default judgment is a matter lying within the "discretion" of the trial court, i. e., see citations supra. However, this discretion is not unlimited and can be abused by the granting of a motion to set aside, Overson v. Martin, 90 Ariz. 9, 363 P.2d 604 (1961), as well as by the denial of a motion to set aside. Coconino Pulp & Paper Co. v. Marvin, 83 Ariz. 117, 317 P.2d 550 (1957).

The decision of Overson v. Martin, supra, is the closest of our Supreme Court decisions to being in point. That case reversed a trial court's setting aside of a default, when the excuses presented were that the wife had been ill for two weeks of the one-month period during which the defendants failed to answer after becoming aware of service, and the husband had been busy "with the gathering of data" during this time. For all that appeared in Overson, the defendants were completely unlearned in the law. On the basis of Overson, this court said in Prell v. Amado, 2 Ariz.App. 35 at 36, 406 P.2d 237, at 238 (1965):

> "Carelessness is not synonymous with 'excusable neglect' as a basis for setting aside a default judgment."

The only arguments made as to why this setting aside could be affirmed on appeal are that the Gardners were "inexperienced" in being served with process and that all doubts should be resolved in favor of securing a trial on the merits. Reliance is

taken upon decisions such as Marquez v. Rapid Harvest Co., 99 Ariz. 363, 409 P.2d 285 (1965); and Gray v. Dillon, 97 Ariz. 16, 396 P.2d 251 (1964).

That "doubt" should be resolved in favor of a trial on the merits is unquestionably the law of this jurisdiction, Marquez v. Rapid Harvest Co., supra, but it is our view that before a "doubt" arises, there must be a showing of unusual circumstance excusing in some degree the failure to answer so as to invoke a power of "discretion" in the trial judge. There is no suggestion in this record that the Gardners were illiterate, or mentally or physically ill, or disturbed, or incapacitated or affected by any unusual circumstance at any time involved in this case.

The decision of Gray v. Dillon, supra, is perhaps the farthest our Supreme Court has gone in upholding the setting aside of a default for excusable neglect. The defendant, Dillon, in that case, at the time of service, was on active duty with the Arizona Air National Guard. He discovered his regular counsel was out of town and that it was necessary for him to secure new counsel. New counsel employed by the defendant filed a motion to set the judgment aside, two days after the taking of default.[1]

■ There are circumstances in Gray that are absent here. These defendants, rather than being deprived of their regular counsel, were advised by their regular counsel as to the appropriate action to be taken after the service of process. There is no showing of any temporary special activity such as military service or otherwise in the picture here. Most defendants are not experienced in receiving service of process. If this default can be set aside, then any default when the defendant "forgot" to answer can be so set aside, depending only upon drawing a trial judge whose "discretion" so inclines him. We cannot affirm the setting aside of this default under what

---

[1]. Motion to set aside default and default judgment was filed in the instant action on January 20, 1967, seven days after learning of the entry of judgment.

we consider to be the well-established law in this jurisdiction.

 However, we do not regard the default and the default judgment to be inextricably attached one to the other. Under our practice, these two concepts are not only separate procedures, governed by separate rules, but they perform different functions. A default is a judicial admission of the plaintiff's right to recover, Postal Ben. Ins. Co. v. Johnson, 64 Ariz. 25, 165 P.2d 173 (1946), but in an unliquidated damage case *not* of the *amount* of recovery. 3 Barron & Holtzoff Federal Practice and Procedure § 1216, at 86 (1958); 6 Moore's Federal Practice § 55.07, at 1822 (2d ed. 1953); 49 C.J.S. Judgments § 201c, at p. 358. A default judgment is the judicial pronouncement which puts an end to controversy, makes available to the prevailing party the coercive processes of the court, and is as efficacious as any other judgment. Wheeling v. Financial Indem. Co., 201 Cal.App.2d 36, 19 Cal.Rptr. 879 (1962); King v. Musch, 26 Ill.App.2d 290, 167 N.E. 2d 698 (1960); 30A Am.Jur. Judgments § 222, at 295–96; 49 C.J.S. Judgments § 200, at pp. 355–356.

 In separately regarding the default judgment, we see there is cause to set aside, arising out of the amount of this judgment, which does not pertain to the default itself. Though this matter has not been specifically advanced by the defendant as a legal cause to set aside the judgment, it is appropriate to uphold an action taken by a lower court on appeal for any reason disclosed by the record, even though the grounds for affirmance have not been advanced by the litigant either below or on appeal, 5 Am.Jur.2d Appeal and Error § 931, at 359–60; 5B C.J.S. Appeal and Error § 1849, at pp. 287–288; cf. Odom v. First

Nat. Bank of Arizona, 85 Ariz. 238, 336 P.2d 141 (1959). In this case, the size of this judgment was an implied argument for relief advanced by the defendants [2] and we conceive that this may very well have been the deciding factor in causing the trial court to set aside both default and default judgment.

After the entry of any default, pertinent rule provides as to the determination of the amount of damage as follows:

> "2. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when required by law." Rule 55(b) (2), R.Civ.P., 16 A.R.S.

This is a rule adopted from the Federal Rules of Civil Procedure, Rule 55(b) (2). In federal courts, when unliquidated damages are sought, as in this tort action, it is necessary for the trial court to conduct a hearing to determine the amount of the damage before entering judgment. Davis v. National Mortgage Corp., 320 F.2d 90 (2d Cir. 1963); and see 3 Barron & Holtzoff, Federal Practice and Procedure § 1216, at 86 (1958); and 6 Moore's Federal Practice § 55.07, at 1822 (2d ed. 1953). This is in accord with the common law that when unliquidated damages are sought, the court must, after the entry of an interlocutory judgment of default (corresponding to the entry of "default" in our practice), conduct a hearing to satisfy its conscience as to the amount of plaintiff's damage before entering judgment.[3] Becker v. Roothe, 184

---

2. I. e., in the defendants' memorandum in support of the motion to set aside, at p. 2, is the following: "It is contrary to all concepts of justice that awards of huge sums of money be made against a person without the person having an opportunity to defend."

3. There is a diversity of authority as to whether there is a right of jury trial as to the issue of damage after default. A leading case holding there is such a right is Thorpe v. National City Bank, 274 F. 200 (5th Cir. 1921). There is considerable authority to the contrary,

Kan. 830, 339 P.2d 292, .296 (1959); and see 30A Am.Jur. Judgments § 218, at 292; and 49 C.J.S. Judgments § 216, at p. 382.

■ The judgment rendered here is in the amount specified in the prayer of plaintiff's complaint.[4] We are favored with a transcript of the hearing conducted by the trial court on the issue of damage. The plaintiff is a 15-year old boy. His injuries consisted principally of fractures of the left femur, left thumb and right collarbone. The medical doctor treating the plaintiff was produced as a witness. At the time of the hearing, the plaintiff had been in the hospital for approximately ten weeks and the doctor opined that he "might" remain in the hospital for "another four weeks." The doctor's testimony indicates no permanent injury or incapacity to the plaintiff nor is there any testimony indicating for what period of time in the future the plaintiff might continue to suffer from his injuries. There is no evidence of any medical expense incurred nor of any special damage in the form of lost wages or otherwise.

Before the court commits its coercive power to a judgment of $50,000 on a claim as to which the amount of damage is inherently uncertain there should be more proof than this. A judgment of this size on such testimony is sufficient "to shock the conscience" of this court so as to merit relief under the doctrine of *Stallcup*. Stallcup v. Rathbun, 76 Ariz. 63, 66, 258 P.2d 821, 824 (1953).

Subsection (6) of Rule 60(c), R.Civ.P., as amended, 16 A.R.S., permits the setting aside of a default judgment for " * * * any other reason justifying relief from the operation of the judgment." This subsection, added by an amendment adopted by our Supreme Court in 1961, is, again, from the Federal Rules of Procedure. See Rule 60(b) (6), Fed.R.Civ.P. This subsection is said to be adopted as a "residual clause embracing matters that do not fall within the preceding five clauses and are of such character that, in equity and good conscience, they warrant relief from the judgment." 6 Moore's Federal Practice § 55.10 [2], at 1836 (2d ed. 1953). In view of the size of this judgment, which appears on the state of this record to be far in excess of that merited by the actual facts pertaining to damage, we hold the trial court was justified, in equity and good conscience, in setting aside this default judgment.

The decision of Becker v. Roothe, 184 Kan. 830, 339 P.2d 292 (1959), is supportive of the result reached here. In *Becker*, a default judgment in an intersection collision case had been entered for the full amount of damage requested in the complaint, without a hearing on damage. The following rule, substantially the same as our Rule 55(c), was held to be applicable:

> "*If* the taking of an account, or the proof of a fact, or *the assessment of damages be necessary to enable the court to pronounce judgment upon a failure to answer*, or after a decision of an issue of law, *the court may*, [1] with the assent of the party not in default, take the account, hear the proof, or assess the damages; or [2] may with the like assent refer the same to a referee or master commissioner, or [3] may direct the same to be ascertained or assessed by a jury. If a jury be ordered, it shall be on or

---

though the granting of a jury trial to the defaulting defendant is usually held to be discretionary with the trial court. Johanson v. United Truck Lines, 62 Wash.2d 437, 383 P.2d 512 (1963); 3 Barron & Holtzoff Federal Practice and Procedure § 1216, at 86–87 (1958); and 6 Moore's Federal Practice § 55.07, at 1822 (2d ed.1953). Statutory provision existing in this state from 1866 until the adoption of the Rule of Federal Procedure in 1939 provided for a jury trial after default on the issue of damage, in the discretion of the trial judge. See Compiled Laws of 1877, § 152 (2d subsection), at 432; R.S.1887 § 808, at 182; R.S.1901 § 1441, at 455; R.S.1913 § 564, at 362; R.C.1928 § 3846, at 900.

4. The complainant's prayer for relief requested " * * * a sum of money that is fair and just compensation and in no event less than the sum of $50,000."

after the day on which the action is set for trial." (Emphasis as in *Becker* opinion.)

G.S. 1949, 60–3109.

The court held:

"It is mandatory under the foregoing statute that the plaintiff prove the amount of his damages."

339 P.2d at 295

And, under a rule permitting the vacation of a judgment "[f]or mistake, neglect or omission of the clerk, or irregularity in obtaining a judgment or order," the court held that failure of such proof was an "irregularity" which required a setting aside of the judgment for the limited purpose of a trial on the issue of damage only. (339 P.2d at 300.)

In *Becker*, there was *no* proof of damage; here there was *some* proof which was grossly inadequate to justify the amount of judgment rendered. This distinction we do not believe to be critical in view of the essentially non-adversary nature of this hearing. It is with the conscience of the court we are concerned—not an obeisance to a formality.

In Elfman v. Evanston Bus Co., 27 Ill.2d 609, 190 N.E.2d 348 (1963), the court was considering a motion to set aside a default judgment under a statutory provision which adopted the common law pertaining to writs of *coram nobis, coram vobis, audita querela* and review as the standard for setting aside judgments on motion. The applicable statute pertaining to proof of damage for default judgment is similar to our Rule 55(c).[5] A hearing on damage had been conducted, but proof presented included damage which appeared to the court,

upon an examination prompted by a motion to set aside, to have been unconnected with the plaintiff's cause of action against the defendant. The Illinois Supreme Court held that "fairness and justice" (190 N.E. 2d at 351) required a limited opening of the judgment, to permit a trial on the issue of damage only.

At least one other court has directed there be such a limited setting aside of a default judgment when there has been no proof of damage in an unliquidated damage case. Ferri v. Braun, 236 Ark. 329, 366 S.W.2d 286 (1963).

In Washington, a default and a default judgment appear to be identical twins insofar as the legal grounds for setting them aside are concerned, but nevertheless they are not Siamese twins, so that they cannot be separated. Johanson v. United Truck Lines, 62 Wash.2d 437, 383 P.2d 512 (1963). In *Johanson,* the trial court conditionally granted the defendant's motion to set aside a default judgment, providing the defendant accept the default itself, so that the defendant would be allowed a trial only on the issue of damage. The defendant rejected such limited relief and appealed. On appeal, the Washington Supreme Court held there had not been a sufficient showing of "unavoidable casualty or misfortune" so as to justify the setting aside of *either* the default or the default judgment (383 P.2d 516), but nevertheless held that the appealing defendant would still have the election of proceeding to a trial on the issue of damage alone (383 P.2d 517). Interestingly, the court gives no reason for permitting the defendant a trial on the issue of damage.

5. Section 71 of the Civil Practice Act of Illinois, Ill.Stat. ch. 110 (Smith-Hurd 1956) reads:

"Upon default, when the damages are to be assessed, the court may hear the evidence and assess the damages without a jury for that purpose. If interlocutory judgment is given in an action brought upon a penal bond, or upon any instrument in writing, for the payment of money only, and the damages rest in computation, the court may refer the matter to the clerk, to assess and report the damages, and may enter judgment therefor: Provided, that either party may have the damages assessed by a jury."

Reason and authority lead us to conclude this is an appropriate case to separate what may heretofore have been unseparated in this state. We hold that when proof of damage after a default in an unliquidated damage case is as scanty as that presented to the court here, an order setting aside a default judgment, but not the default itself, is justified. The order of the trial court setting aside the default in this action is reversed, the order setting aside the default judgment is affirmed, and the case is remanded to the lower court for a trial on the issue of damage alone.

JOHN A. McGUIRE, Superior Court Judge, concurs.

NOTE: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Judge JOHN A. McGUIRE was called to sit in his stead and participate in the determination of this decision.

HATHAWAY, Chief Judge (dissenting):

Perhaps I strain too hard to affirm the superior court judge's conclusion sweeping aside all debris and restoring the status quo ante and the right of both parties to a new start. It would seem that justice is better served in following this course.

Our Supreme Court has indicated that in any determination of whether a default judgment should be set aside the court is guided by equitable principles:

"These principles require that a defendant be given a fair opportunity to litigate a disputed obligation and also require that a plaintiff, who has, according to regular and legal proceedings, secured a judgment be protected against a violation of the rule which requires the sanctity and security of a valid judgment." Coconino Pulp and Paper Company v. Marvin, 83 Ariz. 117, 120, 317 P.2d 550, 552 (1957).

When the circumstances are such, however, that it would be extremely unjust to enforce a default judgment, the equitable principle that a defendant should be allowed to defend on the merits may govern. Bateman v. McDonald, 94 Ariz. 327, 385 P.2d 208 (1963); Wellton-Mohawk Irr. and Drain. Dist. v. McDonald, 1 Ariz.App. 508, 509, 405 P.2d 299 (1965).

The trial court may have concluded that the defendants' conduct in failing to appear or answer, was induced through the repeated admonitions "to get in touch with his insurance company" and to turn any papers over to the insurance company. The mistaken belief that everything was in the hands of the insurance company, coupled with the defendants' lack of experience in litigation, may have led him to believe that he had no further obligation in the matter. Another factor which the trial court may have considered is the haste with which the default was entered.

In view of the strong public policy favoring trials on their merits, we, as an appellate court, should uphold the trial court's ruling when the record discloses sufficient foundation in support thereof and the plaintiff has shown no detriment from the delay. The following language in Boyle v. Veterans Hauling Line, 29 Ill.App.2d 235, 172 N.E.2d 512, 87 A.L.R.2d 861 (1961) is pertinent:

"The question of whether or not a court should set aside a default should be so resolved as to do substantial justice between the parties and with the idea in mind of carrying out, insofar as it is possible, the determination of matters upon their merits. In resolving this problem, a court may well consider whether or not a defendant has a meritorious defense, and whether or not defendant's delay in responding to the court's command actually jeopardizes plaintiff's basic position. But this should not be the only, nor necessarily, the determining factors. It seems to us that

the overriding reason should be whether or not justice is being done. Justice will not be done if hurried defaults are allow-ed any more than if continuing delays are permitted. But justice might, at times, require a default or a delay. What is just and proper must be determined by the facts of each case, not by a hard and fast rule applicable to all situations regardless of the outcome."

The trial court resolved all doubts in favor of the defendants' application, to accomplish a trial on the merits. I cannot say it abused its discretion. Gray v. Dillon, 97 Ariz. 16, 396 P.2d 251 (1964).

To establish that he had a meritorious defense, the husband stated in his affidavit that he was on a through street when the other vehicle involved in the collision, driven without headlights, ran a stop sign. The intersection was obstructed by a hedge and the defendant could not see the other vehicle until it entered the intersection. Since he did not see the other vehicle in time, he had no opportunity to avoid the collision. I believe this to be a sufficient showing to support granting of the motion. The defendants were required to show no more than that the defense may be held to be meritorious on the final disposition by the case. Wilshire Mortgage Corporation v. Elmer Shelton Concrete Con., 97 Ariz. 65, 397 P.2d 50 (1964); Gray v. Dillon, supra.

The procedure designated by my colleagues may be of value, but I do not believe it should be followed here. In setting aside the default judgment, but not the default, responsibility, the first principle of tort law, is eliminated. In effect the parties are placed in a vehicle where the steering wheel has been disconnected and they are left to wrestle for the throttle and the brake. How such a trial by ordeal emulates justice, I cannot fathom. We should affirm the trial court's order setting aside the default and the default judgment.