The **HOME INDEMNITY COMPANY**, a corporation, Appellant,

v.

**ALLSTATE INSURANCE COMPANY**, a corporation, Appellee.

No. 21427.

United States Court of Appeals Ninth Circuit.

April 16, 1968.

Frederick V. Betts (argued) of Skeel, McKelvy, Henke, Evenson & Uhlmann and James M. Lindsey, Jr., Seattle, Wash., for appellant.

P. M. Rohrback (argued) of Horswill, Keller, Rohrback, Waldo & Moren and Pinckney M. Rohrback, Seattle, Wash., for appellee.

Before BROWNING and ELY, Circuit Judges, and THOMPSON, District Judge.

THOMPSON, District Judge:

This is a diversity action in which the amount in controversy exceeds $10,000, thus invoking the statutory jurisdiction of the District Court and of this Court on appeal. 28 U.S.C. §§ 1332, 1291.

United Buckingham Freight Lines (formerly United Truck Lines, Inc.), engaging in business as a public carrier of goods, purchased two policies of liability insurance. The first, dated and effective on May 1, 1960 and expiring on November 1, 1961, was written by Appellee Allstate Insurance Company and undertook to pay on behalf of the insured all sums which the insured should become legally obligated to pay caused by accident and arising out of the ownership, maintenance or use of the insured's commercial vehicles. including the standard printed clause: "Use of the automobile for the purposes stated includes the loading and unloading thereof." The second policy, dated and effective December 31, 1960 and expiring December 31, 1961, was written by Appellant The Home Indemnity Company as a Comprehensive General Liability Policy and undertook to pay on behalf of the insured all sums which the insured should become legally obligated to pay as damages sustained by any person and caused by accident. A special endorsement expressly excluded coverage of commercial vehicles and a standard printed condition provided: "This policy does not apply * * * to the ownership, operation, use, loading or unloading of * * * automobiles." A special endorsement made the policy applicable only to automobiles of the private passenger type owned, leased, operated or hired by the insured. Both policies were purchased by United through Nelson Agencies, Inc., a general insurance agency of Spokane, Washington.

On May 2, 1961, one Green, a truck driver for United who had been instructed to make a commercial delivery of a heavy file cabinet to the Harle Building in Wenatchee, Washington, unloaded the cabinet from the truck at the door of the building. He then enlisted the aid of three Prudential Insurance Co. (the consignee) employees, one of whom was Mr. Johanson, to assist him in maneuvering the cabinet on a hand truck up two flights of stairs to the Prudential offices.[1] In the process, Mr. Johanson was injured. Mr. Johanson's suit against United resulted in payment

---

1. The bill of lading providing for the delivery by United from the shipper to Prudential Insurance Co. is not in evidence. The Court incorporated into its findings of fact the statement of the driver, Green, as follows:

"I am Francis J. Green, age 49. I am married to Ottelin Green and have three children. Two are married and one

to him of $20,000.[2] Allstate and Home each paid one-half of these sums under an agreement which, in effect, preserved to each the right to seek recovery, as against the other, of its contribution. Thereafter, this action was brought to determine which company was obligated by its contract to pay the whole liability of the insured, or whether, as an alternative, the liability was covered by both policies.

The District Court entered judgment in favor of Allstate and against Home for the sum of $11,116.59, and Home has appealed.

The Appellant's argument on appeal rests primarily upon insurance law interpreting "loading and unloading" clauses of liability insurance policies. There is a wealth of authority on the subject. See Annotations, 160 A.L.R. 1259, 95 A.L.R.2d 1129. An illuminating discussion is found in the opinion of the Utah Supreme Court in Pacific Auto Ins. Co. v. Commercial Casualty

Ins. Co., 108 Utah 500, 161 P.2d 423, 160 A.L.R. 1251, which discusses the "coming to rest", "the continuous movement", "the complete operation" and the "use of the truck" doctrines which have been evolved in interpretation of "loading and unloading" clauses. The trend of modern authority undeniably adopts the complete operation theory and includes in the coverage of those automobile insurance policies, which define use of the vehicle as including loading and unloading, the entire process involved in the movement of goods from the moment they are given into the insured's possession until they are turned over at the place of destination to the party to whom delivery is to be made. Couch on Insurance 2d, § 45:128; 95 A.L.R.2d 1129.

■ This is a diversity action governed by Washington law, but the Washington Courts have not been called upon to define the meaning of "loading and unloading" in a liability policy under facts analogous to this case. Handley

---

is still single. I am employed as truck driver for United Buckingham Freight Lines in Wenatchee, Washington. I have been a truck driver for United for 12 years. On 5-1-61 at about 2:30 p.m. I deliver [sic] a filing cabinet to the Harle Building c/o of Prudential Insurance Co. located on the 2nd floor of the Harle Bldg. My instructions from Don Trotter the foreman was to deliver the cabinet to the Prudential Ins. Co. in the Harle Bldg. I parked in the alley beside the Bldg. I unloaded the cabinet myself and placed by the front door entrance. The filing cabinet weighted [sic] 265 pounds. The customary practice in this area regards unloading is that usually the men ask for help in handling heavy items if they are to be moved upstairs or downstairs. They usually get the merchandise near the door and move it from there with the customer's help. If they don't want to assist we just leave the freight by the door. I moved the cabinet myself from the truck to the front door. I then in turn went upstairs to the 2nd floor and advised the Prudential people that if they would give me some help I bring the cabinet upstairs. I got three men to help me. I placed the cabinet on a hand truck and roll it up 2 flights of stairs. Two men were behind the cabinet pushing it up. I was in front of the cabinet

pulling the hand truck. One man just walked along side. I don't remember these men's names except Johnson. I did not give any instructions to any of these men as to what position they should take in order to help move the cabinet. We moved the cabinet to the 2nd floor and placed in the Prudential Office near the door. I wasn't given any indication that any of these men had been hurt while helping me move the cabinet. The moving of the cabinet went very smoothly with most of the weight been [sic] placed on the hand truck. I moved backwards up the stairs. I didn't request any help I only ask [sic] that if they would assist me I would bring it upstairs. If they would not have assisted me the customary practice would be to leave the cabinet by the front door of the building. We only move freight inside a building as a service that is not required by ICC regulations. Read and approved, Francis J. Green."

2. Johanson's complaint against United alleged United's negligence for failure to provide adequate help to make delivery of the steel filing cabinet. The default of United in that action was upheld except as to the amount of damages (see Johanson v. United Truck Lines, 62 Wash.2d 437, 383 P.2d 512 (1962)).

v. Oakley, 1941, 10 Wash.2d 396, 116 P.2d 833, discusses the problem in dicta but holds that there was no causal connection between the dispensing of the ice cream from the truck and the striking of the plaintiff by the baseball, and also that the delivery of the ice cream in the truck and the use of the truck as a means of transportation had been completed prior to the accident. It is interesting to note, however, that the Washington Supreme Court, in the *Oakley* case, does not disavow the continuous operation theory adopted in Butte Brewing Co. v. District Court of Second Judicial District, 110 Mont. 250, 100 P.2d 932. In distinguishing that case, the Washington Court said:

"The above case is not applicable here, as it is apparent that the theory upon which the decision was based is that there had been no *completed delivery* to the person to whom the commodity on the truck was to be delivered, and that until that occurred, the insurance company was liable for the injury occasioned by the unloading. In the instant case, the use of the truck as a means of transportation had been completed prior to the accident, and the commodities therein contained had been delivered to Oakley, for the council."

This rationale for distinguishing the Montana case we believe to be helpful in discerning the Washington law under loading and unloading clauses. The facts of the particular case must be examined to determine the point at which there had been a completed delivery and the complete operation rule may be held to apply to that point.

In its Memorandum Decision, the District Court explained:

"In the view the Court takes of the facts and the law it need not determine what constitutes 'unloading' under the law of the State of Washington. It is the holding of this court that under either of the alternative definitions urged by the parties, it was not the intention of the parties to the Allstate contract that it cover an accident such as the one in question. It was, however, the intention of the parties to the Home contract that coverage extend to such a situation.

"Accepting arguendo the view that the 'complete delivery' doctrine is the law of Washington, the court finds that delivery was completed before the injury to Mr. Johanson occurred. The movement of the cabinet from the front entrance up the stairs was an extra service performed after the unloading process had been effectuated.

"Allstate insured United against risks arising in relation to United's operation and use of motor vehicles. Home insured United against risks arising in relation to the general operation of United's business, exclusive of commercial motor vehicles. It is clear to the court that the extra service which United provided to the customer in this case is much more closely related to United's general business operation than to the operation of the truck."

The formal Findings of Fact and Conclusions of Law signed by the Court incorporated the substance of the Memorandum Decision under the heading "Conclusions of Law."

■■ Our problem on appellate review of the judgment is to determine whether these findings are clearly erroneous. The critical finding is the statement that delivery was completed before the injury to Mr. Johanson occurred. Is this a permissible finding under the evidence presented by the parties who elected to submit the case without evidence of the terms of the contract of carriage under which the insured was making delivery of the filing cabinet to Prudential? Both insurance companies were content to rely on the statement of Mr. Green (Fn. 1, supra), which, in two places, states the customary practice governing delivery of heavy merchandise in Wenatchee, Washington, i. e., "They usually get the merchandise near the door and move it from there with the customer's help. If they don't want

to assist, we just leave the freight by the door. \* \* \* If they would not have assisted me the customary practice would be to leave the cabinet by the front door of the building." Other portions of Green's statement considered out of context are relied upon by Appellant as establishing United's duty to deliver the cabinet to the Prudential offices.

It is also in evidence that United Freight Lines, Inc., the insured, was subject to the Pacific Inland Tariff Bureau, Inc. Rules and Regulations for interstate shipments and subject to the tariffs of the State of Washington Utilities and Transportation Commission for intrastate shipments. Under whichever tariff was applicable to this shipment, additional charges were assessable if delivery by United to the second floor of the Harle Building was required by the contract of carriage. The bill of lading covering the shipment of the file cabinet was lost and is not in evidence, but it is reasonably inferable from the statement of Mr. Green that he was not required to deliver the cabinet to the Prudential offices on the second floor. These tariff schedules, even adopting Appellant's argument that they establish only rates for service, have some probative impact, however slight it may be, in a determination of the point at which unloading and delivery were completed.

The trial court's conclusion, on this scanty and ambiguous record, that the extra service provided by the insured through its driver, Green, was more closely related to United's general business operation under Home's insurance policy than to the operation and unloading of the truck under Allstate's insurance policy has support in the evidence as does the finding that delivery was completed before the injury to Mr. Johanson occurred. Green could not move the cabinet up the stairs alone, and had the consignee refused help, it would have remained on the street level until other arrangements were made. Green's willingness to assist three Prudential employees in moving the cabinet to the second floor has a definite aura of an extra service falling within the general business operation of United in promotion of good will. Appellant's failure to prove that extra charges were levied as called for by the tariff schedule for this service takes it out of the range of a commercial delivery as part of the operation, use and unloading of the truck, and justifies an inference that the movement of the cabinet upstairs was a voluntary assistance to the consignee, three of whose employees were assigned to the task.

We do not consider this to be a case having much, if any, precedential value insofar as Washington law concerning "loading and unloading" coverage in insurance policies is concerned. We have reviewed the trial court's judgment and findings under the accepted standard that they should not be reversed unless found to be clearly erroneous. On the record presented, we cannot say that the trial court's inferences and deductions are unreasonable.

Judgment affirmed.